**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| PAT PIASECKI PHOTOGRAPHY LLC and GREENER CONCEPTS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| v. | ) ) ) | |
| AUTHENTIC BRANDS GROUP LLC, and AUTHENTIC BRANDS GROUP INC., Defendants | ) ) ) ) ) | COMPLAINT AND DEMAND FOR JURY TRIAL |

The Plaintiffs, Pat Piasecki Photography LLC and Greener Concepts, Inc., ("Plaintiffs"), by their undersigned attorney, Sigman, Khan & Chubb, PLLC, for their Complaint against Defendants Authentic Brands Group LLC and Authentic Brands Group Inc. (collectively, "Authentic Brands" or "Defendants"), allege as follows:

## INTRODUCTION

This is a case of willful copyright infringement in violations of 17 U.S.C. §§ 106, 501, and 504. Plaintiffs seek compensatory and statutory damages in an amount to be established at trial.

## PARTIES

1. Plaintiff Pat Piasecki Photography LLC is a Massachusetts limited liability company with a business address of 40 Dale Street, Woburn, Massachusetts, 01801.

2. Patrick Piasecki, an individual, is the sole member and/or an employee of Plaintiff Pat Piasecki Photography LLC. At all times relevant to this action, the Works were created by

Patrick Piasecki within the scope of his employment with Plaintiff Pat Piasecki Photography LLC.

3.  As a result, Plaintiff Pat Piasecki Photography LLC is the author and legal owner of the Works as "works made for hire" pursuant to 17 U.S.C. § 101 and § 201(b).

4.  Plaintiff Greener Concepts, Inc. is a Massachusetts corporation with a business address of 4 Station Street, Upton, Massachusetts 01568.

5.  Melissa Cronin, an individual, is the sole member and/or an employee of Plaintiff Greener Concepts, Inc. At all times relevant to this action, the Works were created by Melissa Cronin within the scope of her employment with Plaintiff Greener Concepts, Inc.

6.  As a result, Plaintiff Greener Concepts, Inc. is the author and legal owner of the Works as "works made for hire" pursuant to 17 U.S.C. § 101 and § 201(b).

7.  Upon information and belief, Defendant, Authentic Brands Group LLC is a limited liability company organized under the laws of New York, with a principal place of business at 1411 Broadway, 21st Floor, New York, NY 10018.

8.  Upon information and belief, Defendant Authentic Brands Group Inc. is a corporation organized under the laws of Delaware, with a principal place of business at 1411 Broadway, 21st Floor, New York, NY 10018. Authentic Brands Group Inc. is the parent holding company of, and exercises control over, Authentic Brands Group LLC and the brand-management subsidiaries through which it operates, including the entities responsible for the Rockport and Cobb Hill brands at issue in this Complaint.

## JURISDICTION AND VENUE

9.  This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States.

10. This action arises under the Copyright Act, 17 U.S.C. § 101, et seq.

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

12. This Court has jurisdiction over copyright actions specifically under 28 U.S.C. § 1338(a).

13. This Court has personal jurisdiction because Defendants conduct substantial business within this judicial district.

14. This Court has personal jurisdiction because Defendants have committed tortious acts of infringement within this state and judicial district.

15. These infringing acts have caused, and continue to cause, substantial harm to Plaintiffs within this state and judicial district.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I. The Originality and Ownership of the Works**

16. This action involves fifty-three (53) original photographic works and nine (9) original storyline videographic works (collectively, the "Works") created by Plaintiffs. *See* Exhibit A attached for representative samples of the Works.

17. The Works are original works of authorship, possessing a high degree of creativity in lighting, composition, staging, and technical execution. Plaintiffs exercised independent artistic judgment regarding camera angles, shutter speeds, specialized lighting configurations, and post-production color grading.

18. The Works are fixed in a tangible medium of expression, qualifying them for full protection under the Copyright Act, 17 U.S.C. § 101 et seq.

19. At all material times, Plaintiffs operated as independent contractors and specialized creative professionals.

20. In creating the Works, Plaintiffs utilized their own high-end professional equipment, including cameras, lenses, lighting rigs, and digital editing workstations.

21. Plaintiffs maintained complete control over the manner and means by which the Works were created, operating from their own studios and locations, and were not subject to the daily supervision or control of the Predecessor as the Predecessor's employees.

22. Plaintiffs are the sole authors and legal owners of the respective copyrights in the Works.

23. Plaintiffs have duly registered the respective Works with the United States Copyright Office (Registration Nos. VA 2-350-306, PA 2-416-262, PA 2-416-261 and PA 2-461-260) (*See* Exhibit B attached).

24. The Works represent a significant investment of Plaintiffs' creative skill, specialized professional equipment, and technical resources.

25. The established fair market value for a commercial license to use each of the fifty-three (53) individual Photographic Works is $1,000 per image, which reflects the high-production nature of the imagery, including custom lighting, staging, and post-production color grading.

26. The Videographic Works include three (3) original, high-definition master videos (the "Master Videos"), which served as the primary creative source material for all subsequent derivative segments ("Derivative Videos"). These Master Videos were used to create six (6) additional Derivative Video segments for use across global social media platforms.

27. The established fair market value for a commercial synchronization and distribution license

for each Master Video is $5,500, and each Derivative Video is $3,500 per finalized video segment.

## II. The Terms of Purchase: Condition Precedent to Transfer

28. In late 2022 and early 2023, The Rockport Company, LLC ("Predecessor") engaged Plaintiffs to produce the Works for commercial marketing purposes.

29. Plaintiffs performed all services as requested and delivered the Works to the Predecessor.

30. The Predecessor accepted the Works without objection, manifesting its approval of the quality and content of the photographic and videographic materials.

31. Following acceptance, the Predecessor immediately utilized the Works in nationwide digital and print marketing campaigns to promote its Rockport and Cobb Hill brands.

32. The Works were used on social media, including on Instagram and Facebook, among other media.

33. Despite accepting and commercially exploiting the Works, the Predecessor failed to remit full payment to Plaintiffs.

34. Specifically, the Predecessor made only partial payments, leaving a combined outstanding balance of $25,675 across four specific invoices (*See* Exhibit C):

    a. Invoice RCH230127B (Pat Piasecki Photography)

    b. Invoice ROC221215B (Pat Piasecki Photography)

    c. Invoice 2260 (Greener Concepts)

    d. Invoice 2308 (Greener Concepts)

35. As a result of nonpayment, legal title to the copyrights in the Works never vested in the Predecessor and remained, at all material times, with the Plaintiffs.

36. Consequently, when the Predecessor entered the Chapter 11 bankruptcy proceeding on June

14, 2023, the Works were not "property of the estate" as defined by 11 U.S.C. § 541, because the Predecessor held no legal or equitable interest in the copyrights.

37. Following the Predecessor's entry into Chapter 11 proceedings, Defendant Authentic Brands Group LLC moved to acquire the Predecessor's operational assets through the bankruptcy process.

38. The Predecessor's own business records, which were transferred to and/or made available for inspection by the Defendant as part of the pre-acquisition due diligence process, clearly and contemporaneously reflected:

    a. An uncured material breach of the governing Terms of Purchase;

    b. A failure of the express condition precedent for the transfer of intellectual property; and

    c. Multiple, active, and specific notices of copyright infringement sent by Plaintiffs to the Predecessor's management and accounting teams.

39. The Predecessor's continued exploitation of the Works following the June 15, 2023, Notice, and its subsequent attempt to include those Works as "transferable assets" in the bankruptcy sale, was an act of calculated infringement.

40. As a sophisticated global entity specializing in the acquisition and management of intellectual property portfolios, Defendant Authentic Brands had an affirmative duty to verify the "chain of title" for all creative assets it intended to exploit commercially.

41. Defendant cannot claim the status of an "innocent infringer" or "bona fide purchaser" because at all material times, the records detailing the uncured breach and Plaintiffs' ownership were either in Defendant's actual possession or were made available to Defendant during the mandatory due diligence period.

42. Defendant had both actual and constructive notice that the Works remained the proprietary intellectual property of the Plaintiffs, and any failure to recognize this title is inexcusable.

43. While a Section 363 Sale may discharge monetary liens against a Debtor, it cannot, as a matter of law, convey ownership of property (the Copyrights) that the Debtor never legally possessed.

44. Consequently, any post-acquisition use of the Works by Defendant Authentic Brands was not an "inherited" debt from the bankruptcy, but a fresh, volitional, and willful decision to infringe upon the Plaintiffs' registered copyrights.

45. Defendant's decision to migrate and display the Works, after the effective date of registration and with full notice of the defective title, constitutes a willful violation of Plaintiffs' exclusive rights under the Copyright Act.

**IV. The Bankruptcy Sale and Authentic Brands Group LLC's Acquisition of Tainted Assets**

46. Following the Predecessor's June 14, 2023, Chapter 11 filing, Defendant Authentic Brands acquired the "Rockport" brand assets via a Section 363 sale.

47. While the Sale Order purported to transfer assets "free and clear" of interests, such an order cannot, and did not, convey ownership of the Works because the Predecessor never legally or equitably possessed them.

48. Defendant Authentic Brands, a sophisticated global brand aggregator, assumed control of the Rockport e-commerce and marketing infrastructure with the Works still prominently displayed and actively being utilized.

49. Despite having full access to the Predecessor's records documenting the uncured breach and the Plaintiffs' notice of infringement, Defendant Authentic Brands did not merely "inherit"

the display; it affirmatively chose to maintain, migrate, and expand the use of the Works to facilitate its own brand relaunch.

**V. Defendant Authentic Brands' Post-Acquisition Volitional Infringement**

50. Following the acquisition in July 2023, Defendant Authentic Brands integrated the "Rockport" and "Cobb Hill" brands into its existing brand management systems, including official social media accounts, including on Instagram and Facebook.

51. Upon information and belief, Defendant Authentic Brands integrated these accounts into its proprietary Meta Business Suite, subjecting the Works to Defendant's overarching digital marketing strategy, oversight, and paid advertising infrastructure, thereby monetizing the infringement on a global scale.

52. Upon information and belief, the Works were migrated from the Predecessor's legacy servers to Defendant's own proprietary e-commerce platforms and Content Delivery Networks ("CDNs"). This is evidenced by:

    a. The change in the website's underlying source code and metadata following the acquisition, indicating a platform-wide data migration;

    b. The deliberate re-hosting of the Works on new, Defendant-controlled URLs and sub-directories; and

    c. The continued high-speed delivery of the Works to global consumers via Defendant's technical providers.

53. Each instance of migrating or re-hosting the Works constitutes a discrete act of reproduction under 17 U.S.C. § 106(1), performed by or at the direction of Defendant Authentic Brands.

54. Between August 2023 and the present, Defendant Authentic Brands utilized the Works as core visual components of a global brand relaunch, which involved the purposeful selection and formatting of the Works to support new marketing initiatives designed to revitalize the Rockport and Cobb Hill product lines.

55. Defendant Authentic Brands made the conscious, volitional decision to maintain and refresh the public display of the Works on its social media feeds.

56. On various dates between August 2023 and May 2024, Defendant (or its agents) engaged in new acts of publication, including:

    a. Adding the Works to Instagram;

    b. "Pinning" posts containing the Works to the top of social media grids; and

    c. Utilizing the Works in "Sponsored" or "Paid" social media advertisements.

57. Plaintiffs have identified at least fifty-three (53) specific instances of unauthorized use of the Photographic Works by Defendant Authentic Brands post-acquisition.

58. For more than a year following its acquisition of Predecessor, Defendant Authentic Brands continued to use the Videographic Works without authorization.

59. Defendant's unauthorized use spans multiple digital platforms, including social media platforms such as Instagram and Facebook.

60. Defendant's unauthorized use of the Works is disseminated across Defendant's international e-commerce domains, ensuring the unauthorized exploitation of Plaintiffs' creative labor in every market where Defendant operates.

61. Each instance of infringement by Defendant Authentic Brands was inextricably linked to "Shop Now" or "Add to Cart" functionalities, demonstrating that Defendant utilized Plaintiffs' intellectual property as a direct driver of retail revenue and profit.

62. Despite being put on formal notice of these specific acts of infringement in 2025, Defendant Authentic Brands maintained a "substantial portion" of the Works on its platforms for months before removal, demonstrating a willful and reckless disregard for Plaintiffs' statutory rights.

## VI. Demand for Cure and Defendants' Actual Notice

63. On June 9, 2025, Plaintiffs, through counsel, sent a formal Cease-and-Desist letter to Defendant Authentic Brands Group LLC that detailed the unauthorized use, the failure of the condition precedent for title transfer, and demanded payment/settlement by June 20, 2025.

64. On June 16, 2025, Defendant Authentic Brands acknowledged receipt and responded to the demand, thereby establishing actual notice of the infringement claims.

65. Despite this notice, Defendant Authentic Brands did not immediately cease its exploitation of the Works.

66. Upon receipt of the June 9, 2025, Notice, which included the May 2023 email chain proving the lack of title, Defendant Authentic Brands had a legal duty to investigate the status of the Works on its platforms.

67. By failing to conduct a reasonable audit of its servers or remove the Works after being provided with actual proof of the unsatisfied condition precedent, Defendant Authentic Brands acted with reckless disregard for Plaintiffs' copyrights.

68. Defendant Authentic Brand's decision to maintain the Works on its servers and continue their public display for commercial gain after June 16, 2025, constitutes willful infringement under 17 U.S.C. § 504(c)(2).

69. On September 24, 2025, Plaintiffs received an email from counsel for Authentic Brands

questioning the basis for Plaintiffs claim.

70. On December 19, 2025, Plaintiffs sent a follow-up demand to counsel for Authentic Brands reiterating the claims and providing detailed damages calculations based on the fair market value of the licenses.

71. Only after receiving *multiple* formal notices, and after significant commercial exploitation had already occurred, did Defendant Authentic Brands eventually remove the Works from its platforms.

72. Defendant's Authentic Brands' ability to promptly remove the Works upon receipt of legal notice demonstrates that at all material times, Defendant exercised full operational control over the infringing displays.

73. Defendant's decision to maintain those displays for at least five (5) months prior to removal constitutes a deliberate and willful choice to continue the infringement for commercial gain.

74. Authentic Brands' removal of the Works from its Platforms constitutes an admission that Defendant lacked a valid license or title to continue displaying the Works.

75. To date, Defendant Authentic Brands has failed to remit the licensing fees demanded, has refused to provide an accounting of the gross profits derived from the unauthorized use of the Works, and has offered no restitution for the damages sustained by Plaintiffs.

**VII. Damages and Valuation**

76. The fair market value for a commercial license to use the original Photographic Works created by Plaintiffs is $1,000 per image.

77. This rate for the Photographic Works is consistent with the professional caliber of the assets and the specific commercial utility they provide in the clothing market space.

78. The established fair market value for a commercial synchronization and distribution license for each Master Video is $5,500, and each Derivative Video is $3,500 per finalized video segment.

79. This rate for the Videographic Works is consistent with the professional caliber of the assets and the specific commercial utility they provide in the clothing market space.

80. Because Defendant Authentic Brands never obtained valid title or a license, it has avoided at least $90,500 in licensing fees (53 images at $1,000/image; 3 Master Videos at $5,500/video; and 6 Derivative Videos at $3,500/video), while generating substantial retail revenue through the use of these Works.

81. As a direct result of the unauthorized and unpaid exploitation of the Works prior to the effective date of registration, Plaintiffs have sustained actual damages in the minimum amount of $90,500.

82. Actual Damages for Pre-Registration Infringement: Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover actual damages and Defendant's profits for all of Defendant's infringing acts occurring prior to the effective date of registration.

83. Plaintiffs' actual damages include, but are not limited to, the baseline license fee of $1000 per image for each of the 53 Photographic Works utilized by Defendant.

84. Plaintiffs' actual damages include, but are not limited to, the synchronization and distribution license fee of $5,500 for each of the 3 Master Videos and $3,500 for each of the 6 Derivative Videos.

85. Statutory Damages for Post-Registration/Willful Infringement: Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to, and hereby elect, statutory damages for all acts of infringement by Defendant occurring after the effective date of registration.

86. The acts of infringement occurring after the effective date of registration include the migration of the Works from the Predecessor's legacy servers to Defendant's own proprietary e-commerce platforms and CDNs.

87. Because the migration of the Works occurred <u>after</u> the effective date of registration and after multiple notices of infringement, such conduct constitutes Willful Infringement.

88. Plaintiff is entitled to the maximum statutory award of $150,000 per work for this willful, post-registration conduct.

89. Attorneys' Fees: Pursuant to 17 U.S.C. § 505, Plaintiffs are entitled to recover their full costs and reasonable attorneys' fees for the post-registration/willful phase of this litigation.

## FIRST COUNT

### *Against All Defendants*
### *(DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. § 501))*

90. Plaintiffs incorporate the allegations in Paragraphs 1 through 89 as if fully set forth herein.

91. The Works are original works of authorship subject to the full protection of U.S. copyright law.

92. Defendants' unauthorized reproduction and public display of the Works on its website, social media, and newsletters constitutes direct infringement.

93. Defendants' infringement is willful and deliberate as evidenced by continued use of over 53 Photographic Works and 9 Videographic Works;

    a. Continued use of the Works despite having both actual and constructive notice from the records in its own possession set forth that the Predecessor lacked title;

    b. The affirmative migration of the Works, including the Master Videos, from the Predecessor's legacy servers to Defendant's own proprietary platforms in July

2023, which constituted new, unauthorized acts of reproduction and display; and

   c.  Defendant's ongoing reckless disregard for Plaintiffs' rights; specifically, after receiving express written notice of the lack of title and authorization on June 9, 2025, Defendant failed to audit its digital assets or cease its unauthorized exploitation of the Works, choosing instead to maintain the infringing content for continued commercial gain.

94.  Actual Damages: For all acts of infringement occurring prior to the Effective Registration date May 10, 2023, Plaintiffs are entitled to recover actual damages (at the rate of $1,000/Photographic Work, $5,500/Master Video and $3,500/Derivative Video) and Defendant's profits pursuant to 17 U.S.C. § 504(b).

95.  Statutory Damages: For all acts of infringement occurring after the effective date of registration, specifically the migration of the data and Works to the Defendant's servers at least as early as July 2023, Plaintiffs are entitled to, and hereby elect, statutory damages of up to $150,000 per work pursuant to 17 U.S.C. § 504(c).

96.  Attorneys' Fees: Because the July 2023 infringement was willful and occurred post-registration, Plaintiffs are entitled to attorneys' fees under 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

- A declaration that Defendants have infringed Plaintiffs' copyrights willfully;

- An accounting of all revenue earned by Defendants during the period of infringement;

- Actual Damages and any profits attributable to the infringement, AND/OR, at Plaintiffs' election, Statutory Damages of up to $150,000 per work for willful infringement pursuant to 17 U.S.C. § 504(c);

- Reasonable Attorneys' Fees and costs pursuant to 17 U.S.C. § 505;

- Pre-judgment interest, to the extent permitted by law, and a permanent injunction.

- For such other and further relief as the Court may deem just and proper.


JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 8, 2026

Respectfully Submitted,

Pat Piasecki Photography LLC
Greener Concepts, Inc.
By their attorney,

/s/ Sara W. Khan
Sara W. Khan
BBO: No. 680769
Sigman, Khan & Chubb, PLLC
75 State Street, Suite 100
Boston, Massachusetts 02109
Ph: 617.990.9850
sara@skclegal.com

**Exhibits**
Exhibit A: Representative samples of the images
Exhibit B: Copies of Copyright Registration Certificates
Exhibit C:      Invoice RCH230127B (PP Photography)
                Invoice ROC221215B (PP Photography)
                Invoice 2260 (GCI)
                Invoice 2308 (GCI)